NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-395

EDWARD G. WRIGHT

vs.

DEPARTMENT OF CORRECTION & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff Edward G. Wright, who was in the custody of

the Department of Correction at all times relevant to this

appeal, brought this action against the Department of

Correction, the Commissioner of Correction in her individual and

official capacities, the Superintendent of the Massachusetts

Correctional Institution-Norfolk (MCI-Norfolk) in his individual

---

[1] Carol Mici, Commissioner of Correction, in her individual and official capacities; Nelson Alves, Superintendent, Massachusetts Correctional Institute-Norfolk (MCI-Norfolk); Kevin M. Goeller, Correction Officer; Brendan K. Joyce, Correction Officer; Christopher M. Lepore, Correction Officer; Joshua A. Malonson, Correction Officer; Sierra C. Devisscher, Correction Officer; Jake R. Okerfelt, Correction Officer; Brandon S. Zamora, Correction Officer; and Craig Smith, Correction Officer, in their individual capacities.

capacity, and various correction officers in their individual capacities seeking declaratory and injunctive relief as well as damages pursuant to 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act (MCRA), G. L. c. 12, § 11I, for alleged violations of constitutional rights under the First and Fourteenth Amendments to the United States Constitution.  Wright appeals from the entry of summary judgment against him and in favor of the defendants by a judge of the Superior Court.  We affirm.

Background.  Pursuant to a "post order" (internal prison procedure) promulgated on July 6, 2021, MCI-Norfolk processed privileged mail intended for an incarcerated person; that order required privileged mail to be opened and inspected in the presence of the incarcerated person after they acknowledged being the recipient and signed a logbook.  If the incarcerated person acknowledged being the recipient but refused to sign the logbook, the order required correction officers to prepare a report, but the order did not specify whether the incarcerated person should be given the mail.

Between March 3, 2022, and April 3, 2022, MCI-Norfolk attempted to deliver privileged mail to Wright.  Wright refused to sign the logbook,[2] and the mail was not delivered to him.

---

[2] Wright refused to sign the logbook acknowledging receipt of the privileged mail prior to a correction officer inspecting the mail because he feared being held responsible for contraband that might be contained in the mail.

Some items were returned to the sender. On March 4, 2022, Wright filed an informal grievance, and on March 27, 2022, he filed a formal grievance challenging the requirement that an incarcerated person sign the logbook to receive his privileged mail. After exhausting his administrative remedies, Wright filed his initial complaint in the Superior Court on March 22, 2022, against the Department of Correction, the Commissioner of Correction, and various correction officers (collectively, the defendants).

On April 12, 2022, while the case was pending, MCI-Norfolk issued a verbal directive that all privileged mail that was not otherwise determined to be contraband be delivered to those in custody regardless of the recipient's willingness to sign the logbook. Immediately thereafter, Wright received all of the privileged mail addressed to him that had not been returned to the sender. In July 2022, the verbal directive was formalized as a Standard Operating Procedure, which required officers to ask recipients to sign the logbook acknowledging that they had received privileged mail, but requiring mail to be delivered even if recipients refused to sign the logbook.

In November 2022, Wright amended his complaint, and the parties later filed cross motions for summary judgment. At the hearing on summary judgment, Wright conceded that the claims for declaratory and injunctive relief were moot because of the

3

issuance of the Department of Correction's directive that privileged mail be delivered to all those in custody regardless of whether they signed the logbook.[3]  The motion judge concluded that Wright's claims under 42 U.S.C. § 1983 and the MCRA failed because the "facts are not sufficient to give rise to any cognizable constitutional injury;" that even if Wright's alleged injuries were sufficient to rise to the level of a cognizable constitutional harm, as a matter of undisputed fact and law, the defendants were entitled to qualified immunity; and that even assuming a cognizable constitutional injury, the claims under the MCRA would fail because relief under the Act is limited to situations in which a right was interfered with by "threats, intimidation or coercion," and Wright offered no such evidence. See Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989).

Discussion.  "We review a decision on a motion for summary judgment de novo."  Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 330 (2021).  Although our review is de novo, we reach the same conclusion as the judge for the reasons articulated in his well-reasoned memorandum of decision and order.

"Government officials are entitled to qualified immunity from § 1983 claims for damages if 'their conduct does not violate clearly established statutory or constitutional rights

_____

[3] Wright did not appeal from the dismissal of the declaratory and injunctive claims due to mootness.

4

of which a reasonable person would have known.'" Gotay v. Creen, 495 Mass. 537, 544 (2025), quoting Littles v. Commissioner of Correction, 444 Mass. 871, 875 (2005). A defense of qualified immunity applies to MCRA claims as well as § 1983 claims. See Williams v. O'Brien, 78 Mass. App. Ct. 169, 173 (2010) (MCRA "incorporates the standard of immunity for public officials developed under 42 U.S.C. § 1983, and accordingly public officials are not liable under the [MCRA] for their discretionary acts, unless they have violated a right under Federal or State constitutional or statutory law that was clearly established at the time" [quotations and citations omitted]).[4] To determine whether a defendant is entitled to qualified immunity, we conduct a two-step "inquiry into whether . . . the facts alleged show the officer's conduct violated a constitutional right, and, if so, whether the right was clearly established so that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"

---

[4] Wright argues that the act of delivering the mail is not discretionary and therefore qualified immunity should not apply to the defendants' actions. The post order detailing the process for the delivery of privileged mail at the prison was incomplete and did not include what steps should be taken should the recipient decline to sign the logbook and thus leaves room for discretion by the correction officers. See Davis v. Scherer, 468 U.S. 183, 196 n.14 (1984) ("A law that fails to specify the precise action that the official must take in each instance creates only discretionary authority").

5

(quotations and citation omitted).  Longval v. Commissioner of Correction, 448 Mass. 412, 419 (2007).

First, we discern no violation of a constitutional or statutory right while acting under color of State law.[5]  To be sure, restrictions on mail services for incarcerated persons implicate interests protected by the First and Fourteenth Amendments to the U.S. Constitution as well as by the Massachusetts Declaration of Rights.  See Commonwealth v. Jessup, 471 Mass. 121, 129 (2015).  Wright, however, has not shown that by following the logbook requirement the defendants violated a "right [that] was clearly established so that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted" (quotation and citation omitted).  Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 404 (2002).  Further, any incidental impact on Wright's access to his privileged mail would not rise to the level of a constitutional violation where the delay was tied to a regulation reasonably related to a legitimate penological interest.  See, e.g., Wolff v. McDonnell, 418 U.S. 539, 577 (1974) (intercepting contraband "surely warrants" limited procedures to inspect privileged mail).  Wright points to no controlling legal authority that prohibited the defendants, at

---

[5] The defendants do not contest that as employees of the Department of Correction they acted under color of State law.

6

the time that the policy was in place, from requiring incarcerated people to sign a logbook to receive their privileged mail.  Without evidence to show that the defendants violated a clearly established constitutional right of which a reasonable correction officer would have been aware, the defendants are entitled to qualified immunity on Wright's claims under 42 U.S.C. § 1983 and the MCRA.[6],[7]

Judgment affirmed.

By the Court (Meade,
Hodgens & Allen, JJ.[8]),

Clerk

Entered:  June 10, 2026.

---

[6] To the extent Wright seeks monetary damages against any defendant in his or her official capacity, the defendants are entitled to judgment on those claims as officers may not be sued for damages in their official capacities under 42 U.S.C. § 1983 or G. L. c. 12, § 11I.  See O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 141 (1993).  See also Williams v. O'Brien, 78 Mass. App. Ct. 169, 173 (2010).

[7] Wright's claims under the MCRA also fail because there is no evidence in the record to show any threats, intimidation, or coercion by the defendants depriving Wright of his constitutional rights.  See Bally, 403 Mass. at 717.

[8] The panelists are listed in order of seniority.